UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>BRETT W. JOHN,<br><br>    Debtor. | Case No. 25-40292-BRW |
| IDAHO DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br><br>vs.<br><br>BRETT W. JOHN,<br><br>    Defendant. | Adv. No. 25-08012-BRW |

**MEMORANDUM OF DECISION (CORRECTED)**

**I.  INTRODUCTION**

Before the Court is a motion for summary judgment and related documents (Doc. Nos. 15, 16, 17, and 18 (collectively, the "Motion") filed by the plaintiff Idaho Department of Labor ("Plaintiff") on November 17, 2025, against the defendant and chapter 7 Debtor, Brett W. John ("Defendant") in this adversary proceeding wherein Plaintiff seeks a judgment that overpayments of unemployment benefits are excepted from discharge in Defendant's bankruptcy case.  Doc. No. 15.

The Court heard oral argument on the Motion on December 17, 2025, and neither Defendant nor his counsel appeared at the hearing.  The Court thereafter took the matter under

MEMORANDUM OF DECISION - 1

advisement. Upon consideration of the submissions and arguments of the parties as well as the applicable law, the Court issues this memorandum decision which resolves the Motion. Rule 7052(a).[1]

## II.  STANDARD ON SUMMARY JUDGMENT MOTIONS

Summary judgment may be granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to judgment as a matter of law. Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Zetwick v. Cnty of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). In resolving a motion for summary judgment, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Zetwick*, 850 F.3d at 440. Moreover, the court does not weigh the evidence; rather it determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). Where evidence is genuinely disputed on a particular issue, such as by conflicting testimony, that issue is inappropriate for resolution on summary judgment. *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016).

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 2

In cases where intent is at issue, summary judgment is seldom granted; however, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999). Summary judgment may be defeated by evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015). On the other hand, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Zetwick*, 850 F.3d 436 at 441.

The moving party bears the initial burden of showing there is no genuine issue of material fact. *Martin v. Mowery (In re Mowery)*, 591 B.R. 1, 5 (Bankr. D. Idaho 2018) (citing *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998))). If the non-moving party bears the ultimate burden of proof on an element at trial, the burden remains with that party to make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id*.

MEMORANDUM OF DECISION - 3

### III. UNDISPUTED FACTS[2]

On February 25, 2020, Defendant applied for unemployment benefits with the Plaintiff for the period of February 23, 2020, through February 20, 2021. Complaint at ¶ 8, Answer at p. 2; Dec. of Carrie Hale, Doc. No. 19 at ¶ 4. The application process contains a fraud warning which provides, in relevant part,

> Misrepresentation in connection with unemployment benefits has serious consequences. Under Idaho law it is a felony to knowingly make a false statement or to willfully fail to disclose a material fact in order to obtain or increase unemployment benefits …. Whether or not criminal charges are filed, you may be required to repay Idaho Department of Labor the total amount of unemployment insurance benefits received …, accrued interest, and civil penalties[.]  [¶] Idaho Department of Labor will verify the information provided in this application to assure its accuracy, and will collect overpayments by all means available under Idaho law, including … liens.

Doc. No. 19 at ¶ 6. The Defendant was required to watch a slide presentation informing him of the consequences of working during a week when he claimed benefits and the requirement to report any wages earned. Complaint, Doc. No. 1 at ¶¶ 8–9; Answer, Doc. No. 7; Statement of Undisputed Facts, Doc. No. 17 at ¶¶ 1–2; Hale Dec., Doc. No. 19 at ¶¶ 9–10. The information presented included examples of fraud. Hale Dec., Doc. No. 19 at ¶ 14. The application included a portion where Defendant certified, swore, and affirmed under penalty of perjury that he had "read all instructions in connection with this application and also the [Unemployment Insurance]

---

[2] As stated above, Defendant failed to respond to the Motion or the Statement of Undisputed Facts filed by Plaintiff (Doc. No. 17), nor did Defendant or his counsel appear at the hearing on the Motion. As such, the Court can rely on the undisputed facts as provided by Plaintiff. Additionally, the source of some of the facts is discovery served by Plaintiff on Defendant's counsel, John Avery, on August 26, 2025. Doc. No. 10.

MEMORANDUM OF DECISION - 4

Pamphlet explaining unemployment benefits reporting requirements" and that he "understand[s] all the consequences described above for misrepresentations made in connection with this application for unemployment benefits." *Id.* at ¶ 7.  Finally, Defendant certified that he would read the Claimant Benefit Rights,

Responsibilities and Filing Instructions Pamphlet ("Pamphlet") that would be mailed to him. *Id.* at ¶ 15.

Upon successfully filing his claim for benefits, Defendant was mailed the Pamphlet which included clear instructions about how to report his earnings, as well as situations that may cause the Plaintiff to stop or deny benefits.  *Id.* at ¶¶ 16–17 and Ex. A.  He was required to file weekly claims for unemployment benefits and answer questions to determine eligibility and to certify his answers were true and accurate.  *Id.* at ¶¶ 18–19 and Ex. A.

Defendant submitted weekly certifications to Plaintiff for benefit weeks ending March 28, 2020, April 4, 2020, May 16, 2020, May 23, 2020, May 30, 2020, June 6, 2020, June 13, 2020, June 20, 2020, June 27, 2020, July 4, 2020, July 11, 2020, July 18, 2020, July 25, 2020, August 8, 2020, August 15, 2020, and August 22, 2020, in which he stated he did not work for any employer, and he did not quit a job.  Hale Dec., Doc. No. 19 at ¶¶ 23–24.  Relevant to the instant case, the certifications submitted by Defendant for the benefit weeks ending March 28, 2020, April 4, 2020, and April 11, 2020 did not include wages from an employer called Workforce Staffing Service, and in fact stated he earned no wages for those benefit weeks.  Hale Dec., Doc. No. 19 at ¶ 25 and Ex. B.  In reliance on the certifications submitted by Defendant, the Plaintiff found him eligible for benefits and paid them to him.  Plaintiff's Statement of Undisputed Facts, Doc. 17, at ¶ 24.

MEMORANDUM OF DECISION - 5

As described in the application, Plaintiff sought to verify the information Defendant provided by gathering information from his employers through Weekly Earnings Request forms. Hale Dec., Doc. No. 19 at ¶ 27 and Ex. C.  An employer named Kirkco Inc., which is the owner of Workforce Staffing,[3] indicated Defendant worked and earned wages for the weeks ending March 28, 2020, April 4, 2020, and April 11, 2020, and that he quit his employment there.  *Id.*  When the information did not match, Plaintiff sent Defendant a letter describing the discrepancy and asked for clarification and evidence to support his assertions but received no response.  Hale Dec., Doc. No. 19 at ¶¶ 28-29 and Ex. D.[4]  Following Plaintiff's audit, the investigator concluded that, "[b]ased on the information in the file, it can only be concluded that [Defendant] provided false information in an attempt to obtain unemployment insurance benefits for which he was not eligible."  *Id.* at Ex. E.

On September 10, 2020, Plaintiff mailed a Personal Eligibility Determination Not Eligible for Benefits on Voluntary Quit ("Quit Determination") to the Defendant.  Hale Dec., Doc. No. 19 at ¶ 31 and Ex. F.  The Eligibility Determination informed Defendant that he did not establish good cause for quitting his employment with Kirkco Inc., and as a result, he was ineligible to receive unemployment benefits effective April 5, 2020.  *Id*. at Ex. F.  That same

---

[3] It appears Kirkco Inc. acquired Workforce Staffing in 2020.  Declaration of Rafael Icaza, Doc. No. 18 at Ex. C.

[4] Kirkco Inc. reported that for the week ending April 11, 2020, Defendant earned $40.17.  Doc. No. 19 at Ex. C.  However, Plaintiff's letter to Defendant indicates that Kirkco Inc. reported $43.50 in wages earned for the week ending April 11, 2020.  *Id.* at Ex. D.  Plaintiff's investigator, Wendy Bair, spoke to Veronica at Kirkco who indicated Defendant's timesheet on April 6, 2020 shows he worked 2.9 hours and had $43.50 in gross earnings.  *Id.* at Ex. E.

MEMORANDUM OF DECISION - 6

day, Plaintiff issued an Eligibility Determination Unemployment Insurance Claim ("Claim Determination") indicating a finding that Defendant had "willfully made a false statement or failed to report a material fact on this unemployment claim" which violated Idaho Code § 72-1366(12). Hale Dec., Doc. No. 19 at ¶ 32 and Ex. G. As a result, he was not eligible for benefits from September 6, 2020, through September 4, 2021. *Id.* Both the Quit Determination and the Claim Determination provided a 14-day deadline to file a protest. Doc. No. 19 at Exs. F and G.

Finally, on September 10, 2020, Plaintiff mailed to Defendant an Overpayment Determination Improper Payment of Benefits has Occurred, which provided a detailed explanation of the overpayments by week, demonstrating a total overpayment of $14,368, and a corresponding penalty of $1,456 ("First Determination"). Hale Dec., Doc. No. 19 at ¶ 33 and Ex. H. The First Determination provided the last day to protest was September 24, 2020. *Id.*

Defendant appealed the Plaintiff's findings on September 18, 2020, indicating he had never worked for Kirkco Inc. and had never lived in Utah.[5] Doc. No. 19 at Ex. I. Plaintiff mailed a notice to Defendant on January 11, 2021, indicating a telephonic hearing would be held on January 25, 2021. *Id.* at Ex. J. When Defendant failed to appear at the hearing, his appeal was dismissed, but the dismissal indicated Defendant could notify Plaintiff that he intended to continue with his appeal, and a form was attached. *Id.* at Ex. K. When Defendant did not appeal, on June 16, 2021, Plaintiff filed a lien against Defendant in the amount of $15,824. *Id.* at Ex. L. A subsequent Overpayment Determination was mailed to Defendant on September 10,

---

[5] It is noteworthy that Defendant only contended that he did not work for Kirkco Inc. or in Utah but apparently does not dispute either that he earned wages during that time or that he quit voluntarily.

MEMORANDUM OF DECISION - 7

2021, which described the same overpayment amount of $14,368, but with an increased penalty amount of $3,592 for a total of $17,960 ("Second Determination"). *Id.* at Exs. M; N. On October 5, 2021, Plaintiff mailed an Unemployment Insurance Benefit Overpayment Statement to Defendant showing an amount due of $18,331.01. *Id.* at Ex. O.

Defendant filed a chapter 7 bankruptcy petition on May 1, 2025. *In re John*, 25-40292-BRW at Doc. No. 1. On July 14, 2025, Plaintiff commenced this adversary proceeding seeking a determination that Plaintiff's debt will not be discharged in Defendant's bankruptcy case.[6] Through attorney John O. Avery, Defendant filed an answer on August 13, 2025, in which he admitted some allegations contained in the complaint. Doc. No. 7.

On August 26, 2025, Plaintiff served interrogatories and requests for production and admission on Defendant through Mr. Avery, with responses due in thirty days. Dec. of Rafael A. Icaza, Doc. No. 18 at ¶ 6 and Ex. A. Seventy-three days later, on November 7, 2025, Mr. Avery responded to the requests for admission only, which response was untimely. *Id.* at ¶ 7 and Ex. B.

On November 17, 2025, Plaintiff filed the instant motion for summary judgment. Doc. No. 15. Defendant has not opposed the motion.

## IV. ANALYSIS

Plaintiff bears the burden of establishing the debt arising from the overpayment of unemployment benefits is excepted from discharge pursuant to § 523(a)(2)(A) by a

---

[6] At the time the adversary complaint was filed, the amount due and owing by Defendant was $18,289.58. Moreover, Defendant had repaid $3,196.54, which was applied to interest pursuant to IDAPA 09.01.30.700. Complaint, Doc. No. 1 at ¶ 28.

MEMORANDUM OF DECISION - 8

preponderance of the evidence. *Netwest Commc'ns Grp., Inc. v. Mills (In re Mills)*, 2008 WL 2787252, at *4 (Bankr. D. Idaho June 25, 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). In order to preserve a debtor's opportunity for a fresh start, the exception to discharge provisions of § 523(a) should generally be construed liberally in favor of the debtor. *Id.*

Turning to the issues presented in the summary judgment motion, Plaintiff asserts the doctrine of collateral estoppel applies to establish the necessary elements of § 523(a)(2)(A). Bankruptcy courts apply the preclusion law of the jurisdiction where the initial judgment was entered. *Herrera v. Scott (In re Scott)*, 588 B.R. 122, 131 (Bankr. D. Idaho 2018). Thus, because the determinations were entered by an Idaho administrative agency, Idaho law governs.

As a preliminary matter, Idaho state law limits the use of preclusion in regard to determinations and decisions relating to unemployment. Under Idaho Code § 72-1368(11)(b),

> No finding of fact or conclusion of law contained in a decision or determination rendered pursuant to this chapter by an appeals examiner, the industrial commission, a court, or any other person authorized to make such determinations shall have preclusive effect in any other action or proceeding, except proceedings that are brought (i) pursuant to this chapter, (ii) to collect unemployment insurance contributions, (iii) to recover overpayments of unemployment insurance benefits, or (iv) to challenge the constitutionality of provisions of this chapter or administrative proceedings under this chapter.

Two District of Idaho cases, *Layton v. Eagle Rock Timber, Inc.*, 2019 WL 1560876 (D. Idaho April 9, 2019) and *Estate of Curtis v. Costco Wholesale Corp.*, 2016 WL 11558228, at *2 (D. Idaho Jan. 29, 2016), have applied Idaho Code § 72-1368(11) to hold that prior decisions relating to unemployment have no preclusive effect on subsequent proceedings outside the four enumerated exceptions.

Thus, the Court must consider whether the instant proceeding falls within one of the enumerated exceptions—specifically, whether the current exception to discharge proceeding is

MEMORANDUM OF DECISION - 9

an action "to recover overpayments of unemployment benefits." As noted by the Ninth Circuit in *Banks v. Gill Dist. Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001), there are often two distinct issues at play: (1) the establishment of the debt; and (2) the nature of the debt. If the Court were to view the present exception to discharge action not as an action to recover unemployment overpayments, but as an action to determine the nature of a debt, arguably the present action would be outside the four exceptions enumerated in Idaho Code § 72-1368(11).

However, this Court, in *JA, LLC v. Sarria (In re Sarria)*, 606 B.R. 854, 861 (Bankr. D. Idaho 2019), considered an exception to discharge action an "action to recover" in the context of awarding attorney fees to the prevailing party under an Idaho law which provided fees in a civil action to recover under a contract. Further, a finding of exception to discharge is a prerequisite to Plaintiff's ability to collect or recover on any unemployment overpayments. As such, the Court finds that the third exception under Idaho Code § 72-1368(11) applies and Plaintiff is not prevented from utilizing preclusion doctrines to establish its § 523(a)(2)(A) claim.

As Idaho Code § 72-1368(11)(b) does not prohibit preclusion, the Court must next consider whether Plaintiff can satisfy the requirements of collateral estoppel under Idaho law. The Idaho Supreme Court set forth the necessary elements of collateral estoppel in *Byrd v. Idaho State Bd. of Land Comm'rs*, 505 P.3d 708 (Idaho 2021). Collateral estoppel applies when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

MEMORANDUM OF DECISION - 10

Further, as noted in *Platz v. State*, 303 P.3d 647 (Idaho Ct. App. 2013), Idaho law permits the application of collateral estoppel to administrative decisions.

First, there must have been a full and fair opportunity to litigate the issue during the prior litigation. As noted in *Scott*, 588 B.R. at 132, this is a relatively low standard, which only requires that an argument could have been made in a prior proceeding. Here, Defendant initially protested the findings of the Quit, Claim, and First Determinations (collectively, "Determination") by filing an appeal, but he neither appeared at the hearing nor indicated his desire to pursue his appeal after it was dismissed. As such, there was a full and fair opportunity to litigate the issue, and the first element is satisfied.

When Defendant elected not to present a defense to Plaintiff's allegations, the lien was ultimately filed. This is procedurally akin to a default judgment. There is a question of whether a default judgment was "actually litigated" or a "final judgment on the merits" for purposes of collateral estoppel. The Idaho Supreme Court held in *Waller v. State Dept. of Health & Welfare*, 192 P.3d 1058, 1062 (Idaho 2008), that a default judgment is entitled to preclusive affect, absent evidence of fraud or collusion. In *Waller*, the defendant had a default judgment entered against him in a state court action which established he was the father of a child and required to pay child support. *Id.* Though the defendant had not answered the complaint or engaged with the litigation in any way, in a later state court action, the default judgment was given preclusive effect, and the defendant was not able to challenge the paternity determination. *Id.* Thus, Idaho law recognizes a default judgment as "actually litigated" and "on the merits." Here, while Defendant did not appeal or otherwise contest the Determination after the initial instance, Plaintiff completed all necessary steps to obtain a lien. As such, under Idaho law, the

MEMORANDUM OF DECISION - 11

Determination was litigated and constitutes a final judgment on the merits and thus the second and third elements are met.

The proceedings conducted by Plaintiff at the agency level conclusively determined the amount of the overpayment, and that issue is not before this Court. This finality is bolstered by the Defendant's untimely responses to the requests for admission in this Court, which have the effect of conclusively establishing that Defendant did not include all wages in his weekly reports to Plaintiff or contest that he voluntarily quit his employment. *See* Doc. No. 26 at Ex. A; Civil Rule 36(a)(3). Rather, the issue before this Court, as discussed below, concerns whether this debt may be discharged in Defendant's bankruptcy case.

The next step to establish preclusion requires the issues in the current litigation to be identical to those previously decided. The Determination established that Defendant, pursuant to Idaho Code § 72-1366(12), "willfully made a false statement or willfully failed to report a material fact" on his claim. Hale Dec., Doc. No. 19 at Ex. G. In particular, Defendant underreported earnings during relevant time periods, resulting in overpayment of benefits.

Idaho Code § 72-1366 addresses the conditions for eligibility to receive unemployment benefits as well as the penalties if applicants receive benefits to which they were not entitled. Relevant here, Idaho Code § 72-1366(12) provides:

> A claimant shall not be entitled to benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits. The period of disqualification shall commence the week the determination is issued. The claimant shall also be ineligible for waiting week credit and shall repay any sums received for any week for which the claimant received waiting week credit or benefits as a result of having willfully made a false statement or willfully failed to report a material fact. The claimant shall also be ineligible for waiting week credit or benefits for any week in which he owes the department an overpayment, civil penalty, or interest

MEMORANDUM OF DECISION - 12

resulting from a determination that he willfully made a false statement or willfully failed to report a material fact.

Plaintiff now seeks a declaration that the debt from the unemployment overpayment is excepted from discharge pursuant to § 523(a)(2)(A). This Court set forth the necessary elements under § 523(a)(2)(A) in *Mowery,* 591 B.R. at 6 (citing *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010)).

> To establish a claim satisfies § 523(a)(2)(A), a plaintiff must prove:
>
> (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In *Mowery*, the Court determined that a West Virginia criminal statute involving the obtaining of money, property and services by false pretenses was not identical to § 523(a)(2)(A) because the West Virginia statute did not require the element of harm. Here, while the claims are similar, the Court finds there is not a complete identity of issues between § 523(a)(2)(A) and Idaho Code § 72-1366(12). Both require a false statement or failure to report a material fact, as well as proof of knowledge and intent. However, Idaho Code § 72-1366(12) does not require a showing of justifiable reliance. But the documents provided as exhibits to the Declaration of Carrie Hale and the unopposed Plaintiff's Statement of Undisputed Facts (Doc. No. 17) filed in connection with the Motion supply the requisite evidence of justifiable reliance in this case. *Idaho Dep't of Labor v. Tileh (In re Tileh)*, 665 B.R. 447, 457–58 (Bankr. D. Idaho 2024).

It is undisputed that Plaintiff paid Defendant unemployment benefits based on his weekly submissions. Therefore, it is clear that Plaintiff actually relied on Defendant's documents. Indeed, Carrie Hale declared:

MEMORANDUM OF DECISION - 13

> Had not Mr. John provided false statements or failed to report material facts to [Plaintiff] in his Claim Applications and weekly certifications, the [Plaintiff] would not have found him eligible for the benefits he was entitled to, as set forth in the September 10, 2020 Eligibility Determination, and would not have overpaid him $14,368.00, as set forth in the September 10, 2020, Overpayment determination.

Doc. No. 19 at ¶ 26. This statement alone, however, is insufficient to satisfy the requirements of § 523(a)(2)(A).[7]

Rather, the standard under § 523(a)(2)(A) is *justifiable* reliance by the Plaintiff on the Defendant's filings. There is abundant case law interpreting what this term means. Justifiable reliance looks to the "qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995); *Shayman v. Aquino (In re Shayman)*, No. 1:21-AP-01025-MT, 2024 WL 1512894, at *9 (9th Cir. BAP Apr. 8, 2024) (a person may justifiably rely on a representation even if its falsity could have been discovered upon investigation); *Gout v. Garner (In re Garner)*, Case No. 21-08028-JMM, 2022 WL 3363681, at *4 (Bankr. D. Idaho Aug. 12, 2022) (creditor did not demonstrate reliance was justified due to prior experience with debtor's untrustworthiness); *Fetty v. DL Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 855 (Bankr. D. Idaho 2010).

---

[7] Defendant specifically denied that Plaintiff relied on his application and weekly filings in both his Answer or in his responses to Plaintiff's requests for admission. Of course, because the responses to the requests for admission were untimely, they are deemed admitted. Request for Admission No. 13 provides: "Admit that [Plaintiff] reasonably relied upon the representations you made in your Claim Applications and your weekly certifications in deciding to pay you unemployment insurance benefits."

MEMORANDUM OF DECISION - 14

The standard of "justifiable reliance" is less stringent than "reasonable reliance," which is objective. *Romesh Japra, M.D., F.A.C.C., Inc v. Apte (In re Apte)*, 180 B.R. 223, 229 (9th Cir. BAP 1995), *aff'd*, 96 F.3d 1319 (9th Cir. 1996) ("Typically, then, if reliance is found to be reasonable, it also meets the lesser, subjective standard of justifiable reliance."). Nevertheless, this does not mean that blind reliance is sufficient. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090-91 (9th Cir. 1996) ("Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud.").

Thus, when justifiable reliance is the standard, the particulars of the parties and the circumstances matter. In this case, it is undisputed that Defendant applied for unemployment benefits from Plaintiff. The application form had clear warnings against filing fraudulent materials. Specifically, it provided that "it is a felony to knowingly make a false statement or to willfully fail to disclose a material fact in order to obtain or increase unemployment benefits" and warned of potential prison time for each false report. Next, it cautioned Defendant of the very possibility he faces here – that of the requirement to repay overpayments with interest and penalties added, as well as disqualification for receiving future benefits for a minimum of one year. Finally, the application required Defendant to acknowledge that his certification was "made under penalty of perjury under state and federal law."

Given the very serious consequences of willingly providing false, incomplete, or inaccurate information, and Defendant's acknowledgment that he understood those consequences, the Court may conclude as a matter of law that Plaintiff justifiably relied on Defendant's submissions, including weekly certification filings. *See, Tileh*, 665 B.R. at 458–59.

MEMORANDUM OF DECISION - 15

## V. CONCLUSION

Because the undisputed facts demonstrate that all elements of exception to discharge under § 523(a)(2)(A) have been satisfied, the Court concludes as a matter of law that the debt attributable to the overpayments Defendant received from Plaintiff are not dischargeable in Defendant's bankruptcy case.  Accordingly, the motion for summary judgment is granted and the trial scheduled for March 11, 2026, will be vacated.  Plaintiff shall prepare and submit a proposed judgment consistent with this decision.

A separate order granting Plaintiff's motion for summary judgment will be entered.

DATED: December 22, 2025

BRENT R. WILSON
U.S. Bankruptcy Judge